United States District Court
Southern District of Texas
**ENTERED**
January 08, 2021
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-13-262 |
| | § | |
| CHARLES HARRIS | § | (Civil Action No. H-19-3615) |

### MEMORANDUM AND ORDER

This criminal case is before the Court on the Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 ("§ 2255 Motion") [Doc. # 222], filed by Defendant Charles Harris. On January 27, 2020, the United States filed its Response [Doc. # 232] in opposition to Harris's § 2255 Motion. The Court issued five orders [Docs. # 236, # 238, # 240, # 242, and # 247) granting Harris's motions for an extension of time to file his reply. Pursuant to the final extension, Harris's reply was due November 24, 2020. *See* Order [Doc. # 247] entered August 25, 2020. Harris has neither filed a reply nor filed another motion for additional time to file his reply. Having reviewed the record and the applicable legal authorities, the Court **denies** the § 2255 Motion.

## I.    BACKGROUND

On May 8, 2013, a federal grand jury returned an Indictment naming Defendant and his sister Antonia Harris as Defendants. *See* Indictment [Doc. # 1]. In the

Indictment, Defendant was charged in two conspiracy counts, one involving health care fraud and one involving health care kickbacks.  *See id.*  Additionally, Defendant was charged with two substantive counts of payment and receipt of health care kickbacks.  *See id.*  Defendant retained David Cunningham to represent him. Cunningham is an experienced and well respected criminal defense attorney in Houston.

On April 4, 2014, represented by counsel, Defendant entered a plea of guilty pursuant to a written Plea Agreement [Doc. # 61].  Defendant pled guilty to one count of conspiracy to commit health care fraud, and admitted under oath that the factual basis in the Plea Agreement and as stated by the United States on the record was accurate.  *See* Rearraignment Transcript [Doc. # 175], p. 18.  The factual basis in the Plea Agreement read as follows:

> As part of the conspiracy, Defendant Charles Harris [who owned Harris Healthcare Group] was involved in certain acts, among others, including the referral of Medicare beneficiaries to Allied [Covenant Home Health, Inc., a company owned by Antonia Harris] for compensation.  Defendant would attempt to mask the nature of the transactions by billing them as "consulting services."  Allied would then submit claims to Medicare for home health services that were not medically necessary, and, in some cases, not provided.  Defendant and others would pay and cause the payment of kickbacks in cash, prepaid cards, gift cards, and other items of value, to beneficiaries in exchange for them agreeing to receive home health services from Allied.  Defendant and Antonia Harris, among others, would also falsify, or cause to be falsified, patient files to make it appear that Medicare beneficiaries qualified for and received services that were not medically necessary and not provided.  Defendant and

> Antonia Harris, among others, would falsify or cause to be falsified home health orders for beneficiaries that were not home bound and did not need home health services. Allied would then submit claims to Medicare for those home health care services. Medicare paid approximately $2,418,902.05 on those claims. After payments from Medicare were deposited into an Allied bank account, Antonia Harris would transfer the proceeds to herself and Defendant, among others.

Plea Agreement, pp. 9-10. In response to questioning by the Court at rearraignment, Defendant stated that he would provide clients to Antonia Harris and she would pay him a kickback. *See* Rearr. Trans. pp. 18-19. Defendant admitted that some of the clients he referred to Antonia Harris did not need the health care services, and that he knew it was illegal to receive kickbacks for the referrals. *See id.* at 19.

In the Plea Agreement, "Defendant and the United States agree the loss related to the conduct described in the Factual Basis of this plea agreement (paragraph 16) is $2,418,902.05." Plea Agreement, p. 6; *see also* p. 11 ("Defendant stipulates and agrees that as a result of his criminal conduct, the victim incurred a monetary loss of at least $2,418,902.05."). Defendant and the United States also agreed "to recommend to the Court the defendant's role was that of an organizer or leader, therefore the role adjustments under Sections 3B1.1 are applicable" and "to recommend to the Court that the scheme described in the Factual Basis of this plea agreement (paragraph 16) did involve sophisticated means as defined under Section 2B1.1 of the Sentencing Guidelines." *Id.*

Also in the Plea Agreement, Defendant "knowingly and voluntarily waive[d] the right to contest his conviction or sentence by means of any post-conviction proceeding" including a § 2255 Motion.  Plea Agreement, p. 5.  Defendant further waived "the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court."  *Id*. at 12.

Defendant agreed in the written Plea Agreement that "if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution."  *Id*. at 10.  Defendant stated specifically that he was "pleading guilty freely and voluntarily because he is guilty."  *Id*. at 13.

The Plea Agreement was signed and sworn to by Defendant, and Defendant made the following acknowledgment:

> I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me.  My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual that may apply in my case.  I have read and carefully reviewed every part of this Plea Agreement with my attorney.   I understand this Plea Agreement, and I voluntarily agree to its terms.

Plea Agreement, p. 14, 16.

At sentencing on June 27, 2017, the Court calculated Defendant's Sentencing Guideline range to be the 120-month statutory maximum.  *See* Statement of Reasons

[Doc. # 146], p. 1.  The Court sentenced Defendant to a term of imprisonment for 120 months,[1] imposed a three-year term of supervised release, and assessed joint and several liability for restitution in the amount of $2,418,902.05.  *See* Judgment in a Criminal Case [Doc. # 145].

Defendant filed a Notice of Appeal [Doc. # 140] to the United States Court of Appeals for the Fifth Circuit.  The Fifth Circuit appointed Georgette Oden to represent Defendant on appeal.  On January 2, 2018, Oden filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).  By Order entered July 20, 2018, the Fifth Circuit dismissed the appeal, finding that "the appeal presents no nonfrivolous issue for appellate review."  *See* Fifth Circuit Order [Doc. # 218].

On September 24, 2019, Defendant filed his § 2255 Motion.  Defendant argues that his waiver of collateral review should not be enforced because his Plea Agreement was not voluntary.[2]  Defendant contends that he received ineffective assistance of counsel at trial and on appeal.  Defendant argues also that the restitution

---

[1]    The Bureau of Prisons has released Defendant to home confinement for the remainder of his sentence.

[2]    Defendant throughout his § 2255 Motion claims to be innocent.  These claims, however, are refuted by his own statements in the Motion.  He admits that he would "refer the patient and receive a referral marketing fee."  *See* § 2255 Motion, p. 28.  He describes himself as a marketer and admits that he would "from time to time market potential patients."  *See id.* at 31.  He admits that he was "provided a fee <u>only</u> for referring patients."  *Id.* at 35 (emphasis in original).

order assessing joint and several liability was illegal.  The United States filed its Response in Opposition [Doc. # 232].  In the Response, the United States cited Defendant's waiver of collateral review contained in the Plea Agreement and, additionally, addressed the merits of the Motion.  Defendant's § 2255 Motion is now ripe for decision.

## II.   WAIVER OF COLLATERAL REVIEW

Defendant argues that his guilty plea was not voluntary and, therefore, his waiver of collateral review under § 2255 should not be enforced.

### A.   Standard for Enforcing Waiver of Right to Collateral Review

A criminal defendant may waive the right to appeal and collateral review, so long as the waiver is knowing and voluntary.  *See United States v. White*, 307 F.3d 336, 339 (5th Cir. 2002); *see also United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005) (waiver of right to appeal).  An "informed and voluntary waiver of the right to file a 28 U.S.C. § 2255 motion will be enforced."  *White*, 307 F.3d at 341 (citing *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)).  A waiver is enforced against an ineffective assistance of counsel claim unless the claimed ineffective assistance directly affected the validity of the waiver or of the plea itself.  *Id.* at 343. If, however, the plea and waiver were knowing and voluntary, and the waiver clearly covers § 2255 motions, the waiver can be enforced.  *Id.* at 343-44.

### B.    <u>Plea Agreement</u>

Pursuant to the written plea agreement in this case, Defendant expressly waived the right to challenge his conviction and sentence collaterally under 28 U.S.C. § 2255. *See* Plea Agreement, p. 5.  The waiver refers specifically to relief under § 2255 and states unequivocally that Defendant "knowingly and voluntarily" waives his right to seek § 2255 relief.  *See id.*

Defendant signed and swore to the Plea Agreement, and it was discussed with him by the Court at the time of his rearraignment.  Defendant acknowledged that "no threats have been made against hi[m] and that he is pleading guilty freely and voluntarily because he is guilty." *Id*. at 13.  Immediately above his signature to the Addendum, Defendant acknowledged that he had "read and carefully reviewed every part of this Plea Agreement" with his attorney, that he understood the Plea Agreement, and that he "voluntarily agree[d] to its terms." *Id.* at 16.

### C.    <u>Rearraignment Proceeding</u>

The transcript of Defendant's guilty plea confirms that he understood the charge against him, understood that he was entering a plea of guilty to the conspiracy charge, and understood that he was waiving his right to collateral review.  The Rearraignment Transcript confirms the statements in the Plea Agreement that Defendant's guilty plea and waiver of collateral review were knowing and voluntary.

At the beginning of the plea proceeding, Defendant was placed under oath and cautioned that if he intentionally told a lie, he "could be prosecuted for a separate crime called perjury." *See* Rearr. Trans., p. 3. The Court instructed Defendant to ask any questions and to let the Court know if he was "confused in any way," and Defendant responded "Yes, Your Honor." *See id.* at 3-4. When the Court reminded Defendant that his lawyer was available to answer any questions or to talk with him at any time he wanted, he again answered "Yes, Your Honor." *See id.* at 4.

Defendant advised the Court that he has a Master's Degree, that he has never been treated for emotional or mental issues, and that he had not had any illegal drugs or alcohol in the days before the rearraignment. *See id.* at 4-5. Defendant told the Court under oath that he was feeling "good" and "clearheaded." *See id.* at 7.

Defendant told the Court under oath that he had read the Indictment and discussed it with his attorney. *See id.* at 5. Defendant understood the charge against him, telling the Court that he was charged with conspiracy to commit health care fraud. *Id.* Defendant stated under oath that he "had enough time to go over the charges against [him] and strategy for either pleading guilty or not pleading guilty, going to trial" and that he was "absolutely" satisfied with his lawyer. *See id.* at 7. The Court found that Defendant was seeking to enter a guilty plea "knowingly, voluntarily, intelligently, and with the advice of his lawyer." *Id.* at 8.

The Court explained to Defendant the rights he would give up if he entered a plea of guilty.  *See id.* at 9-12.  The Court explained clearly the sentencing procedure and the maximum punishment, including imprisonment, fine, supervised release, and a special assessment.  *See id.* at 20-22.  Defendant stated to the Court under oath that he understood.  *See id.* at 22.

Defendant told the Court under oath that he had gone over the Plea Agreement carefully with his lawyer.  *See id.* at 15.  The Court explained to Defendant that the Plea Agreement was a written contract.  *See id.* at 22.  Defendant told the Court under oath that he had read the Plea Agreement carefully and had discussed it with his attorney "paragraph by paragraph."  *See id.*  The prosecutor described the terms of the Plea Agreement, including the waiver of collateral review provision.  *See id.* at 23-24.  Additionally, the Court advised Defendant that if he finalized his plea of guilty pursuant to the Plea Agreement, there could be no Motion to Vacate under § 2255.  *See id.* at 33.  Defendant told the Court under oath that he understood.  *See id.*  The Court again reminded Defendant that there were no promises in the Plea Agreement about the sentence Defendant would receive, and that Defendant could rely only on the promises that actually were in the Plea Agreement.  *See id.* at 35.

After having fully explained to Defendant the charges against him, the factual proffer, the Plea Agreement including the waiver of collateral review, and the rights

Defendant would give up if he entered a plea of guilty, the Court asked Defendant if he still wanted to plead guilty and sign the Plea Agreement.  *See id.* at 36.  Defendant answered yes and entered a plea of guilty to the conspiracy charge.  *See id.*  Defendant told the Court under oath that everything he said during the plea proceeding had been "completely true," that he understood the Court's explanations, and that he felt free to talk to his attorney at any time during the process.  *See id.*  Defendant told the Court under oath that he was pleading guilty freely and voluntarily, and because he was guilty of the crime charged.  *See id.*  When asked if anyone had threatened him or was forcing him to plead guilty, Defendant answered no.  *See id.* at 36-37.  Defendant then signed and swore to the Plea Agreement in the Court's presence.

The Court found that Defendant's guilty plea was supported by facts establishing all the elements of the charge, and that Defendant intended to do the acts that he committed.  *See id.*  The Court found that Defendant's "plea of guilty is voluntarily, freely, and knowingly made" and that he understood the consequences of his guilty plea.  *See id.* at 37-38.  The Court found that the plea was an informed one and accepted Defendant's plea of guilty.  *See id.* at 38.

Defendant's sworn statements made in open court, particularly during a plea colloquy, are entitled to a strong presumption of truthfulness.  *See United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002).  Those statements establish clearly

that Defendant's plea was knowing and voluntary, and that he understood fully that he was waiving his right to seek collateral relief under § 2255.

### D.    Cunningham Affidavit

Defendant's sworn statements in the Plea Agreement and at rearraignment establish that his guilty plea and waiver of collateral review were knowing and voluntary.  The Affidavit submitted by attorney Cunningham provides additional evidence of the knowing and voluntary nature of Defendant's plea and waiver.

Cunningham, an adjunct professor of trial advocacy at the University of Houston Law Center, has extensive experience as a criminal defense attorney in federal court.  *See* Cunningham Aff., Exh. 1 to Response, pp. 1-2.  During his representation of Defendant, Cunningham met repeatedly with Defendant to discuss the case, specifically the discovery provided by the Government.  *See id.* at 3.  Cunningham and Defendant attended a reverse proffer during which the Government explained how they intended to prove the charges against Defendant. *See id.*  During this meeting, the Sentencing Guidelines and their possible application were discussed. *See id.*  Although the prosecutor and Cunningham did not agree on an appropriate Guideline range, both estimated that the range would be well above fifteen years.  *See id.* at 4.  Neither the prosecutor nor Cunningham made any promises regarding the sentence the Court would eventually impose.  *See id.*

While preparing for trial, Cunningham learned that Co-Defendant Antonia Harris intended to plead guilty and cooperate with the Government by testifying against her brother.  *See id.*  At that point, Defendant decided that he wanted to reach a plea agreement with the Government rather than go to trial.  *See id.*  The Government was willing to engage in plea negotiations because it believed Defendant had relevant information implicating a number of other health care providers.  *See id.*  Defendant "showed no hesitation in wanting to plead guilty and cooperate."  *Id.*

Under the Plea Agreement, Defendant agreed to plead guilty to the conspiracy to commit health care fraud charge, which carried a *maximum* sentence of ten years.  *See* Plea Agreement, p. 1; Cunningham Aff. at 5.  In exchange, the United States would dismiss the remaining counts in the Indictment, which carried the possibility of much higher sentences because there was no ten-year cap.  *See* Plea Agreement, pp. 5-6; Cunningham Aff. at 5.

The Plea Agreement contained a Cooperation provision, in which Defendant agreed "to provide truthful, complete, and accurate information."  Plea Agreement, p. 4.  Defendant began to provide information to the Government regarding his fraudulent health care activities with other medical providers.  *See* Cunningham Aff. at 6-7.  Based in part on information provided by Defendant, the United States obtained indictments against several doctors.  *See id.* at 8.  The lead prosecutor on

these new cases, Ashlee McFarlane, advised that she viewed Defendant as a "good witness." *Id*. Based on the apparent success of Defendant's cooperation and his failing health due to kidney problems, Cunningham advised Defendant that "if he continued to provide truthful testimony that the Court might even consider a departure to probation because of (a) his extensive truthful cooperation against a host of medical doctors; and (b) at the time, Mr. Harris was undergoing regular dialysis and awaiting a kidney transplant." *Id*. Cunningham "at no time promised a specific sentence or result." *Id*.

Then things changed. In November 2016, McFarlane contacted Cunningham and advised him that she believed Defendant had been untruthful regarding signatures on material documents. *See id.* at 9. The next day, Cunningham spoke with Defendant, who admitted that there were forgeries. Defendant claimed, however, that he was not responsible for those forgeries. *See id.* Cunningham advised Defendant to tell the truth, and Defendant admitted to Cunningham, McFarlane and others that he had forged a doctor's signature on "a stack" of forms and had lied when he previously stated that the doctor had signed the forms. *See id.* At that point, McFarlane was no longer willing to use Defendant as a witness against any of the doctors. *See id.* Fortunately for Defendant, the Government decided not to declare

this a breach of the Plea Agreement and went forward at sentencing with the only charge having a ten-year maximum sentence.

Defendant chose not to file a reply objecting to or contesting Cunningham's Affidavit. The evidence in the affidavit supports Defendant's sworn statements in the Plea Agreement and at rearraignment that his guilty plea and waiver of collateral review were knowing and voluntary.

### E.   Conclusion Regarding Waiver of Right to Collateral Review

The Court has reviewed Defendant's § 2255 Motion and finds no indication that the waiver of collateral review itself was tainted by any alleged ineffective assistance of counsel. The Court found at the time of the rearraignment that Defendant's guilty plea was knowing and voluntary, that he had counsel available prior to entering the plea, and that he understood the rights he was waiving by pleading guilty pursuant to the written plea agreement. Defendant admitted in the Plea Agreement that he was pleading guilty freely and voluntarily. Having reviewed the full record and with a clear recollection of the relevant proceedings, the Court finds without any doubt that the guilty plea and the included waiver of the right to collateral attack were knowing and voluntary. The Court concludes, therefore, that Defendant's claims are foreclosed by the waiver in the written Plea Agreement. Nonetheless, for purposes of a complete record, the Court will address the merits of Defendant's arguments.

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

### A.   Applicable Legal Standards

Review of a conviction or sentence under § 2255 is generally limited "to questions of constitutional or jurisdictional magnitude." *United States v. Scruggs*, 691 F.3d 660, 666 (5th Cir. 2012).  In this case, Defendant argues that he was denied his constitutional right to the effective assistance of counsel both at trial and on appeal. An underlying argument in support of the ineffective assistance of counsel claim, regarding both trial and appellate counsel, is Defendant's challenge to the legality of the restitution order.

To show the deprivation of effective assistance of counsel, a defendant "must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Davis*, 971 F.3d 524, 530 (5th Cir. 2020).  When determining whether counsel's performance was deficient, "courts apply a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Phea*, 953 F.3d 838, 841-42 (5th Cir. 2020).  "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 694); *United States v. Torres*, 717 F. App'x 450, 455 (5th Cir. 2018).

### B.   Restitution Order for Joint and Several Liability

As a separate claim, and as a primary focus of the ineffective assistance of counsel claims, Defendant argues that the restitution order imposing joint and several liability is illegal.  Defendant relies on the United States Supreme Court's decision in *Honeycutt v. United States*, __ U.S. __, 137 S. Ct. 1626 (2017).  In *Honeycutt*, the Supreme Court held that criminal forfeiture pursuant to 21 U.S.C. § 853(a)(1) "is limited to property the defendant himself actually acquired as the result of the crime." *See id.* at 1635.  The Fifth Circuit has noted, however, that in contrast to forfeiture statutes such as § 853, "the restitution statute expressly authorizes joint and several liability." *See United States v. Sanjar*, 876 F.3d 725, 749 (5th Cir. 2017) (citing 18 U.S.C. § 3663A(a)(1), 3664(h)).  Therefore, under clear Fifth Circuit authority, the restitution order imposing joint and several liability in this case was not "illegal" or otherwise improper.  Defendant is not entitled to § 2255 relief on this claim.

### C.   Trial Counsel

Defendant contends that he received constitutionally ineffective assistance from his trial counsel.  Defendant claims that his attorney coerced him into pleading guilty. As discussed above, Defendant's claims of a coerced guilty plea are refuted by his

sworn statements during rearraignment and by his acknowledgments in the Plea Agreement.  Defendant has not demonstrated ineffective assistance of counsel based on this assertion.

Defendant contends also that his trial counsel was ineffective because he allowed the Court to enter an "illegal sentence."  As discussed above, the restitution order was not an illegal sentence.  "Failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness." *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998); *United States v. Williams*, 2018 WL 4201340, *2 (W.D. La. Aug. 31, 2018); *Johnson v. United States*, 2018 WL 10246986, *5 (N.D. Tex. Apr. 11, 2018).  Therefore, trial counsel's failure to object that the restitution order was illegal was not deficient performance.

Defendant alleges that his trial counsel failed to conduct an adequate investigation and to call witnesses in his defense.  Defendant complains primarily about his sister receiving a significantly lower sentence (3 years) than his 10-year sentence.  To establish an ineffective assistance of counsel claim regarding an allegedly inadequate investigation, a defendant seeking relief under § 2255 "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  *See United States v. Daniel*, 21 F.3d 1108 (5th Cir. 1994) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir.1989));

*United States v. Israel*, __ F. App'x __, 2020 WL 7658421, *8 (5th Cir. Dec. 23, 2020). Defendant fails to explain how any additional investigation would have affected his decision to plead guilty. This is particularly true regarding Antonia Harris's sentence, since she was sentenced over four years after Defendant entered his guilty plea. Because he has failed to demonstrate how additional investigation would have affected his plea decision, this claim for relief under § 2255 fails.

Defendant complains that his attorney failed to object to the enhancement to the Sentencing Guidelines calculation for his role as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." In the Plea Agreement, Defendant agreed that this enhancement would be recommended to the Court. *See* Plea Agreement, p. 6. At the rearraignment, the prosecutor mentioned specifically the agreement in the Plea Agreement "to recommend to the Court the Defendant's role was that of an organizer or leader, and therefore, the role adjustments under Section 3B1.1 are applicable." *See* Rearr. Trans., p. 24. The parties' agreement left no legal or factual basis for trial counsel to object to the enhancement.

Defendant's assertion that trial counsel was ineffective for failing to object to the loss amount is similarly refuted by the record. In the Plea Agreement, "Defendant and the United States agree the loss related to the conduct described in the Factual Basis of this plea agreement (paragraph 16) is $2,418,902.05." Plea Agreement, p. 6.

Surprisingly, Defendant argues that his attorney was ineffective for failing to advise the Court regarding Defendant's debriefing with the Government.   At sentencing, trial counsel wisely avoided any detailed discussion of Defendant's debriefing.  The prosecutor, on the other hand, was fully willing to advise the Court regarding Defendant's "cooperation" with the Government.  The prosecutor advised the Court that during the course of his debriefing with the United States, Defendant "made material false statements that led to the indictment of several other individuals." *See* Sentencing Transcript [Doc. # 170], p. 12.  Specifically, Defendant "said that signatures of a doctor were the doctor's signature and the doctor continued to sort of sign these fraudulent forms, when in fact the defendant knew it was his signature all along and he had forged the doctor's signature." *Id*. at 12-13.  Clearly, it was not constitutionally ineffective assistance for counsel to avoid repeating this damaging information before the Court at sentencing.

The Court has carefully reviewed the full record and finds no evidence that Defendant's trial counsel rendered deficient performance in any manner.  Indeed, Cunningham's performance was well above the minimum requirements for constitutionally effective performance.  Defendant's claim based on this allegation is without merit and is denied.

### D.   **Appellate Counsel**

Defendant argues that his counsel on appeal rendered constitutionally ineffective assistance because she filed an *Anders* brief instead of raising the issues Defendant raises in his § 2255 Motion, specifically the issue regarding the restitution order.  For the reasons explained above, failure to raise meritless arguments was not ineffective assistance of counsel.

Defendant argues that appellate counsel was ineffective because she failed to cite the Fifth Circuit decision in *United States v. Ganji*, 880 F.3d 760 (5th Cir. 2018) to support his appeal.  This argument is without merit.  The *Ganji* decision was issued January 30, 2018, after Oden filed the *Anders* brief on January 2, 2018.  In any event, the *Ganji* decision would not have assisted Defendant on appeal.  In *Ganji*, the Fifth Circuit held that there was insufficient circumstantial evidence presented at trial to support Dr. Ganji's conviction for conspiracy to commit health care fraud.  *See Ganji*, 880 F.3d at 772.  Here, however, Defendant admitted under oath that he committed the crime of conspiracy to commit health care fraud.  Even had the *Ganji* decision been issued prior to the filing of the *Anders* brief, it was not deficient performance for Oden to consider the case inapplicable to Defendant's appeal.

Defendant has failed to demonstrate that his counsel on appeal was constitutionally ineffective and, as a result, he is not entitled to relief under § 2255.

## IV.   CERTIFICATE OF APPEALABILITY

There can be no appeal from a final order in a § 2255 proceeding unless a certificate of appealability issues. *See Welch v. United States*, __ U.S. __, 136 S. Ct. 1257, 1263 (2016) (citing 28 U.S.C. § 2253(c)(1)).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id*. (quoting 28 U.S.C. § 2253(c)(2)).  The standard for a certificate of appealability is satisfied when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner."  *Id*. (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The Court finds that reasonable jurists could not debate whether Defendant knowingly and voluntarily waived his right to seek relief under § 2255, or whether he has demonstrated constitutionally ineffective assistance of counsel from trial or appellate counsel.  Therefore, a Certificate of Appealability will not issue in this case.

## V.   CONCLUSION AND ORDER

Defendant's waiver of his right to seek collateral review pursuant to § 2255 was waived in the Plea Agreement.  Both the Plea Agreement and the waiver were knowing and voluntary.  Defendant's restitution order was a valid and legal order. Defendant received constitutionally effective assistance of counsel, both at trial and on appeal.  Consequently, it is hereby

**ORDERED** that Defendant's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 [Doc. # 222] is **DENIED** and the corresponding civil action (4:19-3615) is **DISMISSED WITH PREJUDICE**.  The Court will issue a separate Final Order.

SIGNED at Houston, Texas, this  8th  day of **January, 2021**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE